# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHEAUNTE STEWART, | : |
| | : CIVIL ACTION |
| Plaintiff | : |
| | : |
| vs. | : |
| | : NO. 17-CV-4122 |
| PROGRESSIVE BUSINESS | : |
| PUBLICATIONS, INC., | : |
| | : |
| Defendant | : |

## MEMORANDUM AND ORDER

**JOYNER, J.**                                                 **June 26, 2018**

This employment discrimination action is before the Court at the present time for disposition of Defendant's Motion for Summary Judgment.[1] For the reasons set forth below, the motion shall be granted.

## Factual Background

In July 2016, Plaintiff, Sheaunte Stewart applied for a position with Defendant, Progressive Business Publications, as a telephone marketing representative. Plaintiff, who was some six months pregnant at the time of her application, was interviewed a

---

[1] On May 17, 2018, based upon the deposition testimony of another former employee of Progressive Business Publications, the Court granted Plaintiff leave to amend her complaint to allege a race discrimination claim and Plaintiff's Amended Complaint was filed on May 22, 2018. In our Order granting leave to amend, we gave the parties an additional forty-five (45) days to take discovery and extended the time for filing supplemental summary judgment motions on the new race-based claims to July 23, 2018. Accordingly, the motion which we here adjudicate concerns *only* Plaintiff's original claims which are premised upon gender/pregnancy discrimination.

short time after submitting her application by the Manager of Defendant's Branch location in Bensalem, Pennsylvania, Dorothy Scollon. On July 13, 2016, Ms. Scollon sent Plaintiff an email offering her the job and informing her that her on-the-job training would begin on Tuesday, July 26, 2016 and would last for four days, from 9 a.m. to 3:30 p.m., and that she would be paid at the rate of $8.40 per hour.  Included in Plaintiff's training materials was information regarding Defendant's wage structure such as its base salary, performance bonuses, its rules, standards, personal breaks, paid training, working hours and other policies, as well as an explanation that reads as follows:

> When you complete the training period, **you will be promoted to Permanent Marketing Rep**.  To successfully complete the training period, you must achieve .60 sales per paid hour or higher.  Managers have the discretion to promote a trainee who has not generated .60 or higher, if the manager determines that the trainee's attitude, effort, and skills are such that they believe they will improve their performance and soon reach desired minimum rate. Otherwise, the trainee will not maintain their employment with the company.  (emphasis in original)

Plaintiff was one of an unknown number of trainees when she reported for work on July 26th, a group consisting of both men and women.  Plaintiff's first four days of training were without incident.  To the best of her recollection, Plaintiff was the only trainee who was noticeably pregnant.  On Monday, August 1, 2016, following a brief office birthday celebration, Plaintiff testified that Ms. Scollon "pulled her to the side" and "said

2

that it looked like I was due any day, like I was about to drop."
Plaintiff told her that she wasn't due until October and that she
"wasn't about to drop," but Ms. Scollon said she didn't believe
her. Plaintiff testified that Ms. Scollon looked at her like she
was "some type of like a beach ... whale or something," and that
"she seemed like she was mad a little bit, like my pregnancy was
like a bad thing to her, like she was just like disappointed,
like, you know." Plaintiff said that Ms. Scollon sent her home
early that day – sometime between 12:45 or 1 p.m.

Later that afternoon, Plaintiff was struck by a car and she
therefore didn't work the following day. Nor did she report for
work the day after that because she had been subpoenaed to
testify as a witness in an assault case. On Friday, August 5th,
at 8:30 a.m., Ms. Scollon called Plaintiff on the phone and told
her that "it wasn't going to work out." Although Plaintiff
acknowledges that she's not sure how many of her fellow trainees
lasted past a week, she thinks it may only have been five.
Likewise, Plaintiff is unaware of what her sales per hour were or
what the sales per hour figures were for the other trainees in
her group. In actuality, Plaintiff's sales per hour were only
.41 and thus she did not meet the benchmark of .60 set by the
company.

Plaintiff commenced this lawsuit on September 14, 2017
pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§2000e, *et. seq.* and the Pennsylvania Human Relations Act, 43 P.S. §951, *et. seq.* alleging that Defendant discriminated against her in the terms and conditions of her employment because of her female gender and because she was pregnant. Defendant denies these allegations and submits that its decision to terminate Plaintiff's employment at the end of her training period was for a lawful, non-discriminatory reason - her failure to satisfy the .60 sales-per-hour criteria for promotion to permanent marketing representative. Discovery on this claim has now closed and Defendant moves for the entry of judgment in its favor as a matter of law.

### **Standards for Entry of Summary Judgment**

Motions for summary judgment are permitted under Fed. R. Civ. P. 56, subsection (a) of which provides as follows:

> A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

As this rule makes clear, summary judgment is appropriately entered only when the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Willis v. UPMC Children's Hospital of Pittsburgh, 808 F.3d 638, 643 (3d Cir. 2015). An issue of fact is said to be material and genuine if it "affects

the outcome of the suit under the governing law and could lead a reasonable jury to return a verdict in favor of the nonmoving party." Parkell v. Danberg, 833 F.3d 313, 323 (3d Cir. 2016)(quoting Willis, supra. and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248,106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

It is also well-settled that in considering a motion for summary judgment, the reviewing court should view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Burton v. Teleflex, Inc., 707 F.3d 417, 425 (3d Cir. 2013). "If the non-moving party bears the burden of persuasion at trial, 'the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.'" Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006)(quoting Wetzel v. Tucker, 139 F.3d 380, 383, n.2 (3d Cir. 1998)). Thus, where the defendant is the moving party, the initial burden is on the defendant to show that the plaintiff has failed to establish one or more essential elements of her case. Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

In response, and "to prevail on a motion for summary judgment, 'the non-moving party must present more than a mere scintilla of evidence; there must be evidence on which the jury could reasonably find for the non-movant.'" Burton, supra,(quoting Jakimas v. Hoffmann-La Roche, Inc., 485 F.3d 770,

5

777 (3d Cir. 2007)). Thus, "[t]he moving party is entitled to judgment as a matter of law when the non-moving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Moody v. Atlantic City Board of Education, 870 F.3d 206, 213 (3d Cir. 2017)(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986)).[2]

## Discussion

Title VII's text clearly proscribes employment discrimination on the basis of sex, among other protected classifications:

> **(a) Employer practices.** It shall be an unlawful employment practice for an employer -
>
> > (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

---

[2] Rule 56©, discussing summary judgment procedures, further provides in relevant part:

**(1) Supporting Factual Positions**. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

**(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

**(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

...

6

> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. §2000e-2(a).

And, as Congress explained in the Pregnancy Discrimination Act amendment to Title VII's definitions, 42 U.S.C. §2000e(k):

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 703(h) of this title [42 U.S.C.S. §2000e-2(h)] shall be interpreted to permit otherwise. ...

Thus, Title VII's prohibition against employment discrimination based on sex "is breached 'whenever an employee's pregnancy or related medical condition is a motivating factor for the employer's adverse employment decision.'" Doe v. C.A.R.S. Protection Plus, Inc., 527 F.3d 358, 364 (3d Cir. 2008)(quoting In re: Carnegie Center Associates, 129 F.3d 290, 294 (3d Cir. 1997)). See also, International Union v. Johnson Controls, 499 U.S. 187, 111 S. Ct. 1196, 1203, 113 L. Ed.2d 158 (1991)(recognizing that under the Pregnancy Discrimination Act, (PDA), 42 U.S.C. §2000e(k), for purposes of Title VII, discrimination based on a woman's pregnancy is, on its face,

7

discrimination because of her sex)(citing <u>Newport News Shipbuilding & Dry Dock Co. v. EEOC</u> 462 U.S. 669, 684 (1983)).

The Pennsylvania Human Relations Act, (PHRA) is similar. Indeed, 43 P.S. §955 provides in pertinent part:

> **§955. Unlawful discriminatory practices**
>
> It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, or in the case of a fraternal corporation or association, unless based upon membership in such association or corporation, or except where based upon applicable security regulations established by the United States or the Commonwealth of Pennsylvania:
>
> > (a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required. ...

43 P.S. §955(a).

As a general matter, decisional principles of Title VII and PHRA are the same for purposes of summary judgment such that claims under the state law are analyzed in an identical manner[3] to those under the federal statute. <u>Burton</u>, 707 F.3d at 432; <u>Alinoski v. Musculoskeletal Transplant Foundation, Inc.</u>, No. 16-3010, 679

---

[3] Thus our analysis of Plaintiff's claims in this case makes no distinction between the federal and the state law.

Fed. Appx. 224, 226, 2017 U.S. App. LEXIS 2643 at *2, 2017 WL 623944 (3d Cir. Feb. 15, 2017); Solomen v. Redwood Advisory Co., 183 F. Supp. 2d 748, 751 (E.D. Pa. 2002).

The law does not require that pregnant employees be afforded preferential treatment; rather, what is mandated is that employers treat pregnant employees the same as non-pregnant employees who are similarly situated. Doe, supra. As is the case with all claims for relief under Title VII and the PHRA where there is no direct evidence of discrimination[4], claims of gender/pregnancy discrimination are analyzed under the rubric originally established in McDonnell Douglas Corporation v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973). Alinoski, supra; Neidigh v. Select Specialty Hospital, No. 16-1013, 664 Fed. Appx. 217, 220, 2016 U.S. App. LEXIS 21421 (3d Cir. Nov. 30, 2016). That is, the complainant must carry the initial burden under the statutes of establishing a prima facie case of discrimination. To make a prima facie showing of gender discrimination, a Plaintiff "must show that: (1) she was a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) members of the

---

[4] "Direct evidence is evidence that would prove the prohibited intent without resort to an inference or presumption." United States EEOC v. Bob Evans Farms, LLC, 275 F. Supp. 3d 635, 651 (W.D. Pa. 2017)(citing Torre v. Casio, Inc., 42 F.3d 825, 829 (3d Cir. 1994)). "When determining whether proffered evidence constitutes direct evidence of discrimination, the court considers whether the evidence, if believed, compels the conclusion that discriminatory animus played a part in the challenged decision." Id,(quoting Weigel v. Baptist Hospital of Eastern Tennessee, 302 F.3d 367, 383 (6th Cir. 2002)).

9

opposite sex were treated more favorably. Burton, 707 F.3d at 426. In pregnancy discrimination cases, the first element of the prima facie case[5] is modified to also require that an employer have actual knowledge of an employee's pregnancy. Doe v. C.A.R.S., 527 F.3d at 365. Finally, "[a] plaintiff may also meet the last [fourth] element by showing that the adverse employment action 'occurred under circumstances that could give rise to an inference of intentional discrimination.'" Burton, supra,(quoting Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008)).

Upon a showing that a prima face case has been made, the burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. McDonnell Douglas, 411 U.S. at 802, 93 S. Ct. at 1824; Jones v. School District of Philadelphia, 198 F.3d 403, 412 (3d Cir. 1999). This second step does not require that the employer prove that the articulated legitimate, nondiscriminatory reason was the actual reason for the adverse employment action, but rather requires only that the employer provide evidence that would allow the factfinder to determine that the decision was made for nondiscriminatory reasons. Willis, 808 F.3d at 644.

---

[5] There are essentially four elements necessary to establish a prima facie case of pregnancy discrimination such that a plaintiff must show: (1) that she is or was pregnant and that her employer knew she was pregnant; (2) she was qualified for the job; (3) she suffered an adverse employment decision; and (4) there is some nexus between her pregnancy and her employment termination that would permit a fact-finder to infer unlawful discrimination. Doe, 527 F.3d at 366; Hall v. Seneca Area Emergency Services, Inc., Civ. A. No. 2:13-cv-01501, 2015 U.S. Dist. LEXIS 62713 at *5, 2015 WL 2248218 (W.D. Pa. May 13, 2015).

See also, Capps v. Mondelez Global, LLC, 847 F.3d 144, 152 (3d Cir. 2017)(holding, where an employer provides evidence that the reason for the adverse employment action taken by employer was honest belief that employee was misusing FMLA leave, that is a legitimate, nondiscriminatory justification for discharge).

Then, once an employer makes such a showing, the burden returns to the plaintiff to prove, by a preponderance of the evidence, that the articulated reason was a mere pretext for discrimination. Ross v. Gilhuly, 755 F.3d 185, 193 (3d Cir. 2014). Stated otherwise, a plaintiff must survive summary judgment or judgment as a matter of law by submitting evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. Keller v. Orix Credit Alliance, 130 F.3d 1101, (3d Cir. 1997); Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).

In this case, the record evidence shows: (1) that Plaintiff was pregnant and that the defendant knew that she was pregnant, (2) that she was **not** qualified for promotion as outlined in the training materials because her sales per hour (SpH) total over the course of her training period was only .410; (3) that she suffered an adverse employment decision (*i.e.,* she was not made a permanent marketing representative and her employment was

11

terminated) and (4) that there were other members of her training class who also did not meet the benchmark .60 figure who were nevertheless made permanent marketing representatives and were thus treated more favorably than she was.[6] As outlined above, however, the training materials did clearly state that: "[m]anagers have the discretion to promote a trainee who has not generated .60 or higher, if the manager determines that the trainee's attitude, effort, and skills are such that they believe they will improve their performance and soon reach desired the minimum rate. Otherwise, the trainee will not maintain their employment with the company." In view of this discretion and the fact that Plaintiff's SpH figure was lower than any of the three comparators, we cannot find that Plaintiff has made out the requisite prima face case.

However, even assuming *arguendo* that she did, we cannot find that Plaintiff has made the evidentiary showing necessary to satisfy her burden of showing by a preponderance of the evidence that the reason articulated by defendant for failing to promote her to a permanent position was a pretext for pregnancy

---

[6] Indeed, it appears from the "TM Rep Ranking by SpH (sales per hour) records for the period 07/26/2016 - 08/05/2016 and the deposition testimony of Samantha Konzelman, who was formerly employed as a morning manager and one of the trainers for Progressive Business Publications marketing representatives, that Kelly Hartman, Megan Hartwell and Nicole Ferguson, all of whom were in Plaintiff's training "class," were made permanent marketing representatives despite having sales per hour figures below the .60 mark. Specifically, Kelly Hartman's SpH during that period was .443, Megan Hartwell's was .548 and Nicole Ferguson's was .586. However, Ms. Konzelman also testified that there were also non-pregnant trainees who did not meet the .60 SpH figure who *were* let go.

discrimination.  Again, accepting as true Plaintiff's testimony that Ms. Scollon pulled her aside toward the end of her training period to comment on her size and to inquire about her due date, there is nothing else in this record from which we could infer that the reason that Plaintiff was not being retained was because she was pregnant.

For one, as Ms. Konzelman testified, she was pregnant and subsequently gave birth to a daughter on February 21, 2016, some 5 months before Plaintiff was hired and began training.  Ms. Konzelman took approximately 6 weeks off and then returned to work at Progressive.  Plaintiff testified that she was visibly pregnant when she was hired by Ms. Scollon and by her testimony it appears that the only time that her pregnancy was discussed was during her August 1st conversation with Ms. Scollon.  While we take note of the temporal proximity between this conversation and Plaintiff's termination a few days later, we find that everything in this case that took place was close in time: at most, a few days elapsed between Plaintiff's application and her interview and a few more days between her interview and her receipt of the email offering her the job.  Not quite two weeks later, Plaintiff started training on Tuesday, July 26th, the conversation at issue occurred less than one week later, on Monday, August 1st and Plaintiff received a phone call early on the morning of Friday, August 5th from Ms. Scollon telling her

13

that "it's not going to work out."  As numerous other district courts in this circuit have held, where the same decision maker both hires and fires an employee within a short time span, these facts are evidence of non-discrimination. Harris v. Astellas Pharmaceuticals, No. 13-1663, 2015 U.S. Dist. LEXIS 134750 at *30 (W.D. Pa. Sept. 24, 2015); Ruff v. Temple University, 122 F. Supp. 3d 212, 219 (E.D. Pa. 2015); Kotakis v. Wesco Distribution, Inc., 650 F. Supp. 2d 435, (W.D. Pa. 2009)(citing Bintliff-Ritchie v. American Reinsurance Co., No. 05-3802, 2007 U.S. Dist. LEXIS 10469 at *11 (D. N.J. Feb. 15, 2007) and James v. Allentown Business School, No. 01-857, 2003 U.S. Dist. LEXIS 12046 at *11 (E.D. Pa. June 2, 2003)).

Further, the only evidence of record as to the remarks which Ms. Scollon purportedly made to Plaintiff come from Plaintiff herself.  Ms. Scollon does not recall having a conversation with Plaintiff about her pregnancy and denies saying anything about Plaintiff's size, appearance or asking about her due date.  There were evidently no third party witnesses to this conversation and crediting Plaintiff's version of events as true, Ms. Scollon simply asked when Plaintiff's baby was due to be born and remarked that she appeared "ready to drop" and "due any day now."  While we well understand that it may be insensitive to advise a pregnant woman that she appeared "ready to drop," we do not find this remark to be in and of itself suggestive of discrimination,

14

especially in light of the fact that the same person who is charged with saying it is the person who hired Plaintiff some two weeks earlier. Additionally, while Plaintiff believed that Ms. Scollon was looking at her like she was "some type of a beach whale or something" and "seemed like she was mad a little bit, like my pregnancy was like a bad thing to her, like she was just like disappointed," the caselaw is clear that a plaintiff's personal belief that the real reason for the job action was discriminatory animus does not create a genuine issue of material fact. See, Brock v. International Union of Operating Engineers, Local 542, 140 F. Supp.3d 432, 438 (E.D. Pa. 2015); Dellapenna v. Tredyffrin/Easttown School District, No. 09-6110, 2011 U.S. Dist. LEXIS 3503 at *22, 2011 WL 130156 (E.D. Pa. Jan. 13, 2011)(citing Waggoner v. Garland, 987 F.2d 1160, 1164 (5th Cir. 1993)). "Subjective beliefs, without more, are not sufficient to defeat summary judgment, especially where the plaintiff does not deny the conduct relied upon by the employer for the job action." Dellapenna, supra.

Moreover, the record reflects that Plaintiff did not work at all between the day on which Ms. Scollon pulled her aside to ask about her due date and her termination – Plaintiff had emailed out of work first because she had been hit by a car and then later because she had been subpoenaed to testify in court. Although Ms. Scollon testified that she believes "in giving

15

people chances" and did not terminate Plaintiff because of her attendance problems, she did believe Plaintiff had an attitude problem in that it seemed as though she didn't want to follow the script and do what the company was asking her to do.  As previously noted, if a manager determined that a trainee's attitude, effort, and skills led them to believe that the trainee could improve, the manager could exercise their discretion and promote the trainee to a permanent representative but they did not have to do so.  We therefore find that Ms. Scollon did not abuse her discretion in determining that Plaintiff was not a good fit for the job and in deciding to terminate her.

Finally, we note that Plaintiff testified that she was not sure how many of the other trainees lasted past the first week, but thinks it was no more than 5.  Ms. Scollon and Colin Drummond, the Defendant's Director of Call Center Operations both testified that there was high turnover among marketing representatives, such that the company's goal was to retain 50% of the representatives/trainees in the position more than two weeks and 35% to stay at least six weeks.  If anything, this evidence is highly suggestive that there is a naturally high attrition rate among Progressive Business Publications' marketing representative trainees and that Defendant elected to not offer Plaintiff a permanent position because of concerns that she would not prove to be successful in the position.  Indeed, as Mr.

Drummond and Ms. Scollon both testified, Ms. Scollon herself was later released from the company's employment because she too failed to satisfy the minimum sales requirements necessary to keep her job.

Thus we conclude that even giving Plaintiff the benefit of every possible doubt that she has somehow made out a prima face case of pregnancy discrimination, there is no evidence to rebut the legitimate reason for her termination articulated by the defendant. Her claim for discrimination on the basis of her pregnancy fails under Title VII and the PHRA and we shall therefore grant Defendant's motion for summary judgment.

An order follows.