IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SHEAUNTE STEWART            :
                            : CIVIL ACTION
        Plaintiff           :
                            :
    vs.                     : NO. 17-CV-4122
                            :
PROGRESSIVE BUSINESS        :
PUBLICATIONS, INC.          :
                            :
        Defendant           :

**MEMORANDUM AND ORDER**

**JOYNER, J.**                                    **January 2, 2018**

This employment discrimination case is before the Court a second time on Motion of Defendant for Summary Judgment. The present motion is on Plaintiff's remaining claim that she was unlawfully discharged on the basis of her race. For the following reasons, the motion shall be granted and the case dismissed.[1]

---

[1] Previously, in our Memorandum and Order of June 26, 2018, this Court granted Defendant's Motion for Summary Judgment and entered Judgment in favor of Defendant and against Plaintiff on Counts I and III of Plaintiff's Amended Complaint in which Plaintiff claimed that she had been terminated from Defendant's employ on the basis of her pregnancy in violation of Title VII, 42 U.S.C. §2000e, *et. seq.* and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §951, *et. seq.* Because leave had recently been granted to Plaintiff to amend her initial pleading raising a race discrimination claim on the basis of newly discovered evidence, we had extended additional time to take discovery relative to that claim and thus the motion for summary judgment as to that claim was then premature. Because discovery as to that claim has now closed, Defendant has since filed the second, supplemental motion for summary judgment which is now before the Court.

## Background

As we noted in our previous Memorandum, this case arose in July 2016 when Plaintiff Sheaunte Stewart was interviewed and offered a position as a telemarketing sales representative for Defendant, Progressive Business Publications by Dorothy Scollon, the then-Branch Manager for Defendant's Bensalem, Pennsylvania location. At the time of her hire, Ms. Scollon sent Plaintiff, who is African American and was then-approximately 6 months' pregnant, an email informing her that her job training would commence on Tuesday, July 26, 2016, that training would be from 9 a.m. to 3:30 p.m. over a period of four days and that she would be paid at the rate of $8.40 per hour. Included in Plaintiff's training materials was information concerning Defendant's wage structure including base salary, performance bonuses, and Defendant's rules, standards and policies regarding personal breaks, paid training and working hours as well as the following statement:

> When you complete the training period, **you will be promoted to Permanent Marketing Rep**. To successfully complete the training period, you must achieve .60 sales per paid hour or higher. Managers have the discretion to promote a trainee who has not generated .60 or higher, if the manager determines that the trainee's attitude, effort, and skills are such that they believe they will improve their performance and soon reach desired minimum rate. Otherwise, the trainee will not maintain their employment with the company. (emphasis in original)

When Plaintiff began work on July 26, 2016, she was one of an unknown number of trainees in a group which consisted of both men and women and during the time that she worked there, Plaintiff was the only African American employee at the Bensalem site.  At the time training began, Ms. Scollon told Plaintiff's group that even though it may seem easy, the job was hard and that "in the beginning, a lot of times, the person that's sitting next to you, they won't be there tomorrow."

Plaintiff's first four days of training were without incident.  On Monday, August 1, 2016, following a brief office birthday party, Plaintiff testified that Ms. Scollon "pulled her to the side" and "said that it looked like I was due any day, like I was about to drop."  Plaintiff told her that she wasn't due to have her baby until October, but Ms. Scollon said she didn't believe her.  Plaintiff testified that Ms. Scollon looked at her like she was "some type of like a beach … whale or something," and "she seemed like she was mad a little bit, like my pregnancy was a bad thing to her, like she was just like disappointed, like you know."  At the end of this conversation, Ms. Scollon sent Plaintiff home early, sometime between 12:45 and 1 p.m.

Later that same day, Plaintiff was struck by a car and she didn't report for work the following two days.  Nor did she work the day after that, because she had been subpoenaed to testify as

a witness in a court case.  On August 5th at 8:30 a.m., Ms. Scollon telephoned Plaintiff and told her that "it wasn't going to work out."  When Plaintiff asked why, Ms. Scollon simply repeated that it wasn't going to work out.

While the record does not clearly reflect how many of the trainees from Plaintiff's training group became permanent marketing representatives, Plaintiff estimated that there may have been five trainees who lasted past a week.  Plaintiff's sales per hour at the conclusion of her training period was only a .41 and thus while she did not know what her sales per hour were or what the sales per hour figures were for the other trainees in her group, Plaintiff failed to meet the .60 benchmark designated in the training materials.

As noted above, Plaintiff initiated this lawsuit on September 14, 2017 alleging that Defendant's failure to retain her as an employee was a result of pregnancy and gender discrimination in violation of both Title VII and the PHRA.  In the course of discovery, one of Defendant's former morning training managers gave a deposition in which she said she had heard Ms. Scollon refer to African Americans as "ghetto," and that she had referred to another manager (who was apparently not in a protected class), as a "slut," ostensibly because of the way that she dressed.  Based upon this deposition testimony, Plaintiff was given leave to file an Amended Complaint and

discovery was re-opened for a period of 45 days. Plaintiff filed an Amended Complaint adding a race discrimination claim pursuant to 42 U.S.C. §1981 on May 22, 2018. At the close of this additional discovery period, Defendant again moved for the entry of summary judgment on Plaintiff's §1981 claim.

## **Summary Judgment Standards**

Under Fed. R. Civ. P. 56(a), a motion for summary judgment is properly granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Resch v. Krapf's Coaches, Inc., 785 F.3d 869, 871 (3d Cir. 2015). An issue of fact is material and genuine if it "affects the outcome of the suit under the governing law and could lead a reasonable jury to return a verdict in favor of the nonmoving party." Parkell v. Danberg, 833 F.3d 313, 323 (3d Cir. 2016) (quoting, *inter alia*, Willis v. UPMC Children's Hospital of Pittsburgh, 808 F.3d 638, 643 (3d Cir. 2015)).

In considering a motion for summary judgment, the reviewing court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Burton v. Teleflex, Inc., 707 F.3d 417, 425 (3d Cir. 2013). "If the non-moving party bears the burden of persuasion at trial, 'the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is

5

insufficient to carry that burden.'" Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). Hence, where the defendant is the moving party, the initial burden is on the defendant to show that the plaintiff has failed to establish one or more essential elements of her case. Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005). And in response, "the non-moving party must present more than a mere scintilla of evidence; there must be evidence on which the jury could reasonably find for the non-movant." Burton, supra.

## **Discussion**

As noted, Plaintiff filed her race discrimination claim under 42 U.S.C. §1981, which reads as follows:

- **(a) Statement of equal rights.** All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

- **(b) "Make and enforce contracts" defined.** For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

- **(c) Protection against impairment.** The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

6

Historically, the courts have "applied the tests used to evaluate employment discrimination claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et. seq.* to employment discrimination claims brought under §1981, since 'the substantive elements of an employment discrimination claim under section 1981 are generally identical to the elements of an employment discrimination claim under Title VII.'" Anderson v. Wachovia Mortgage Corp., 621 F.3d 261, 267 (3d Cir. 2010) (quoting Brown v. J. Kaz, Inc., 581 F.3d 175, 181-182 (3d Cir. 2009)). "Thus, both the direct evidence test introduced by Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S. Ct. 1775, 104 L. Ed.2d 268 (1989) and the burden-shifting framework introduced by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973), may be used to determine whether an employer has discriminated against a plaintiff in violation of §1981." Id, at 267-268.

Under the McDonnell Douglas burden-shifting framework, the employee must make out a *prima facie* case of intentional discrimination by proving: (1) that she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the circumstances could give rise to an inference of unlawful discrimination. Cooper v. Thomas Jefferson University Hospital, No. 17-2982, 2018 U.S. App. LEXIS 23145 at *5 - *6 (3d Cir. August 20, 2018). "A

7

plaintiff is not qualified for a position, as required by the second prong – and her *prima facie* case fails – if there is objective evidence she did not possess minimal job qualifications such as 'a license or a similar prerequisite.'" Id, (citing Makky v. Chertoff, 541 F.3d 205, 216 (3d Cir. 2008)). "When a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the employer to 'articulate a legitimate, non-discriminatory reason for the employee's rejection.'" Sarullo v. U.S. Postal Service, 352 F.3d 789, 797 (3d Cir. 2003) (quoting McDonnell Douglas, 411 U.S. at 802, 93 S. Ct. 1817). "When the employer articulates a legitimate, non-discriminatory reason for its action, the plaintiff, to survive summary judgment on claims of discrimination, 'must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" Lapaz v. Barnabas Health System, No. 15-1773, 634 Fed. Appx. 367, 369 (3d Cir. Dec. 16, 2015) (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).

In a direct evidence or "mixed motives" case, "the plaintiff has the burden of showing by evidence tied to a discriminatory animus that an illegitimate factor had a 'motivating' or 'substantial' role in the employment decision. Ezold v. Wolf,

Block, Schorr & Solis-Cohen, 983 F.2d 509, 522 (3d Cir. 1992) (citing Price Waterhouse, 490 U.S. at 258). "If the plaintiff makes such a showing, the burden shifts to the employer to prove by a preponderance of the evidence 'that it would have reached the same employment decision even in the absence of' the impermissible factor." Id, (quoting Price Waterhouse, 490 U.S. at 244-45). Thus, under this theory, a plaintiff need only show that her race was a motivating factor in the adverse employment action. Schroder v. Pleasant Valley School District, No. 10-2339, 458 Fed. Appx. 128, 131 (3d Cir. Jan. 18, 2012). As with pretext cases applying McDonnell Douglas, a mixed motives plaintiff will fail to establish a *prima facie* case of employment discrimination if there is unchallenged objective evidence that she did not possess the minimal qualifications for the position plaintiff sought to obtain or retain. Makky, 541 F.3d at 215.

In this case, the record reflects that during the five-day period that Plaintiff worked at Defendant's Bensalem branch, she was the only African American employee, that she worked a total of 24.42 hours during which she made 44 contacts which resulted in 10 sales such that Plaintiff's sales per paid hour quotient was 0.410. (Exhibit "A" to Plaintiff's Memorandum of Law in Opposition to Defendant's Supplemental Motion for Summary Judgment; Exhibit "12" to Defendant's Memorandum of Law in Support of Supplemental Motion for Summary Judgment). Although

Plaintiff began paid training on Tuesday, July 26, 2016 and continued over the next four days, Ms. Scollon, the Bensalem Branch Manager who had hired her some two weeks earlier, sent Plaintiff home several hours early on the last day on which Plaintiff reported for work because Plaintiff "was having a tough day, not too many contacts [and her] performance was a little low." (Exhibit "C" to Plaintiff's Memorandum of Law in Opposition to Defendant's Supplemental Motion for Summary Judgment, at p. 50). Given that Plaintiff did not work on the following Tuesday, Wednesday or Thursday, Ms. Scollon called Plaintiff on the phone on the morning of Friday, August 5, 2016 to inform her that she didn't think the job was a good fit for her, that "it wasn't going to work out," and that she wasn't going to be promoted to a Permanent Marketing Representative position.

With the exception of Ms. Scollon questioning her about the due date for her baby, Plaintiff had no issues or problems with the way any other employee or representative of Defendant treated her during the course of her brief employment. (Exhibit "6" to Defendant's Memorandum of Law in Support of Supplemental Motion for Summary Judgment, at pp. 51-58). Thus, from this evidence, we find that Plaintiff has made out only two of the requisite four elements necessary to establish a *prima facie* case under the McDonnell Douglas standard: (1) that she was a member of a

10

protected class, and (2) that she suffered an adverse employment action.  Insofar as Plaintiff's training materials clearly stated that "[t]o successfully complete the training period, you must achieve .60 sales per paid hour or higher," and Plaintiff failed to meet that benchmark, she did not qualify for promotion to a permanent marketing representative position. (Exhibit "8" to Defendant's Memorandum of Law in Support of Supplemental Motion for Summary Judgment).

And, in light of the supplemental evidence now provided[2], it does not appear that there were any other trainees in Plaintiff's class who were retained despite having also failed to attain the required .60 sales per hour figure.  (Exhibit "12" to Defendant's Memorandum of Law in Support of Supplemental Motion for Summary Judgment; Exhibit "B" to Defendant's Reply Memorandum in Further Support of Supplemental Motion for Summary Judgment). Consequently, there is absolutely no evidence that Defendant

---

[2] In Footnote 6 in this Court's June 26, 2018 Memorandum Opinion, we observed that it appeared from Samantha Konzelman's deposition that Megan Hartwell, Nicole Ferguson and Kelly Hartman were all members of Plaintiff's training class.  In support of the instant motion, however, Colin Drummond, Defendant's Sales Director who supervises some 12 call centers in New Jersey, Ohio and Pennsylvania, including the Bensalem branch, has since attested that Ms. Hartwell, Ms. Hartman and Ms. Ferguson were not in Plaintiff's training group but were instead permanent marketing representatives working at the Bensalem call center at the time of Plaintiff's training.  Further, all three have also since been terminated for poor performance.  Mr. Drummond's Declaration further states that there were other employees who were hired at the same time as was Plaintiff, including Christopher Danelutti, Sherwena Mayers and Cherice Rickards who did not remain employed through the initial training period. (Exhibit "B" to Defendant's Reply Memorandum in Further Support of Motion for Supplemental Motion for Summary Judgment.

11

treated other, non-African American employees more favorably than Plaintiff.

Rather, the only evidence of racially discriminatory animus is the deposition testimony of Samantha Konzelman, the former morning training manager at Defendant's Bensalem site, that she heard Ms. Scollon and Regional Manager Gary Calobrisi refer to African Americans as "ghetto" and that she thought that Ms. Scollon would "talk down – when an African American would come in, she'd just think they really wouldn't – they're not going to perform well." (Exhibit "B" to Plaintiff's Memorandum of Law in Opposition to Defendant's Supplemental Motion for Summary Judgment, at p. 22). While this testimony is indeed relevant and was the basis for permitting Plaintiff to file an Amended Complaint, "stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision." Ade v. KidsPeace Corp., 698 F.3d 501, 514 (3d Cir. 2010) (quoting Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 359 (3d Cir. 1999)). See also, Ezold, 983 F.2d at 545 (same). Here, there is no evidence when these remarks were made nor has any evidence been produced to support an inference that Ms. Scollon's alleged attitude and remarks toward African Americans played any part in her decision to not make Plaintiff a permanent employee. Without more then, we

cannot find that these remarks are sufficient to withstand the defendant's motion for summary judgment.

Notwithstanding that Plaintiff appears to only be pressing a pretext theory of discrimination, we similarly cannot find that she has the evidence to support a finding of racial discrimination under a mixed motives analysis either. Again, under this theory, the onus is on Plaintiff to show that she possessed the minimal qualifications for the position and that the decision to not promote her to a permanent position was motivated in part by her race. By virtue of her inability to attain the minimum sales threshold and her failure to produce evidence demonstrating a nexus between Ms. Scollon's alleged racial bias and her decision to terminate Plaintiff's employment, the necessary showing has not been made. For these reasons, we are constrained to grant Defendant's motion and enter summary judgment on Count II of Plaintiff's First Amended Complaint.

An Order follows.